UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,       )
                                )
                 Plaintiff,     )       No. CR-04-191-LRS
                                )
           vs.                  )       **ORDER DENYING**
                                )       **§2255 MOTION**
KELLY L. FALCON,                )
                                )
                 Defendant.     )
_____  )

    **BEFORE THE COURT** is the Defendant's 28 U.S.C. §2255 Motion To Vacate Or Set Aside Conviction (Ct. Rec. 331). The motion is heard without oral argument and the court has determined that an evidentiary hearing is unnecessary. All of the grounds for relief asserted by Defendant can be resolved by the evidence currently of record. The "files and the records of the case conclusively show the prisoner is entitled to no relief."

**I. BACKGROUND**

    On September 12, 2005, Defendant was convicted by a jury of Malicious Use Of Fire To Damage Property Used In Interstate Commerce in violation Of 18 U.S.C. Section 844(i). He was acquitted on two other counts alleged in the Indictment (Wire Fraud and Use Of A Fire To Commit Wire Fraud). At trial, Defendant was represented by Christina Hunt, Esq., and Kimberly Deater, Esq., of the Federal Defenders Office.

    Defendant filed Motions For Acquittal and New Trial. An evidentiary hearing was conducted on those motions on January 10, 2006. Those motions were denied at the conclusion of the hearing, as memorialized in an order filed

**ORDER DENYING §2255 MOTION- 1**

January 27, 2006.  (Ct. Rec. 286).  Also on January 10, 2006, Defendant was sentenced to a term of imprisonment of 60 months to be followed by three years of supervised release.  Terrence M. Ryan, Esq., represented Defendant on these motions and at sentencing.  He was appointed as counsel after Defendant's trial, and after trial counsel made an oral motion to withdraw.

A direct appeal was taken to the Ninth Circuit Court of Appeals.  On June 6, 2007, the court of appeals issued an opinion affirming Defendant's conviction.  The court's mandate was issued on July 24, 2007, and filed in this court on July 27, 2007.  Mr. Ryan also represented the Defendant on appeal.

On August 28, 2008, Defendant filed his §2255 motion.  There is no dispute that this motion has been timely filed.  At the direction of the court, the Government has filed a response to the motion.

## II.  DISCUSSION

### A.  Effect Of Rulings On Direct Appeal

Issues raised on direct appeal are not subject to collateral attack under §2255.  *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985); *Egger v. United States*, 509 F.2d 745, 748 (9th Cir.), *cert. denied*, 423 U.S. 842 (1975).  "Grounds which were apparent on the original appeal cannot be made the basis for a second attack under §2255."  *Egger*, 509 F.2d at 748.  Alternatively, legal claims asserted on direct appeal and then in a §2255 motion may be considered the same, even though the supporting statements and facts for the claims may vary.  *Molina v. Rison*, 886 F.2d 1124, 1129 (9th Cir. 1989).  "[W]hether a particular 'new' issue is merely a 'new legal argument' rather than a 'new legal claim' will depend on whether the new issue is itself a ground for relief, as opposed to being merely a supporting argument or predicate step to a larger, basic claim."  *Id*.

Five grounds for relief are presented in Defendant's §2255 motion: 1) ineffective assistance of trial counsel in a) failing to call fire experts to refute the

**ORDER DENYING §2255 MOTION- 2**

Government's claims on origin and duration of the fire; b) failing to refute Government's claim that Defendant would receive the insurance proceeds; and c) failure to impeach Government witness DuVal's claim that a third party did not threaten to burn the building down; 2) ineffective assistance of counsel at the hearing on motion for new trial, and on direct appeal, in failing to have fire expert witnesses available to testify at the motion hearing; 3) based on the evidence from the fire expert witnesses that was not presented at trial, Defendant is actually innocent of the charge of which he was convicted; 4) Defendant was denied the counsel of his choice at the trial of his case because the lead ATF agent harassed and threatened that counsel (Jeffry K. Finer, Esq.), forcing him to resign; and 5) the Government presented testimony from DuVal that led the jury to believe that Scott Lanes had not made any threat to burn down the Wild Horse Saloon, although the Government and DuVal knew that DuVal had previously called the police and reported receiving information that Lanes was threatening to burn down the bar.

### 1. Ineffective Assistance Of Trial Counsel Re Failure To Call Fire Expert Witnesses

In his motion for new trial, and on appeal, Defendant, through Mr. Ryan, presented 19 separate bases of alleged ineffectiveness of trial counsel (Christina Hunt, Esq. and Kimberly Deater, Esq.). (Ct. Rec. 254 at pp. 2-6[1] and Appellant's Opening Brief at 2006 WL 2429703). One of these was that counsel had failed to utilize, as witnesses at trial, Brian Hattem and his assistant, Gordon Sheldon, doing business as Alert Security & Investigations. Mr. Ryan noted that their finding that the fire was ignited much later in the morning (much later than 12:42 a.m.) was

---

[1] The motion for new trial alleged 21 separate bases (Ct. Rec. 254 at pp. 2-6), but during the motion hearing, Defendant voluntarily withdrew at least two of the bases.

**ORDER DENYING §2255 MOTION- 3**

supported by John DeHaan, Ph.D., who concluded there was no way to establish the precise time of ignition, the fire burned for about an hour, and that the dance floor burn was not the result of a flammable liquid pour, but was scorched by the radiant heat from the fire near the stage, which was close to the dance floor.

The Ninth Circuit Court of Appeals found that none of Defendant's 19 ineffective assistance claims had merit:

> Finally, we do not find any of Falcon's nineteen ineffective assistance of counsel claims (IAC) to be meritorious. Although we generally do not address IAC claims on direct appeal, review is appropriate here because the record was sufficiently developed in conjunction with Falcon's earlier filed Rule 33 motion for new trial. [Citations omitted]. Based upon the record, the district court was correct in holding that "there is nothing . . . to indicate that [Falcon's] legal representation in this case was deficient, nor that any alleged deficiency in any way prejudiced his defense." [Citation omitted].

*United States v. Falcon*, 2007 WL 1649986 at *2 (9ᵗʰ Cir.2007).

Defendant contends that despite this ruling, he is not barred from relitigating the issue of whether trial counsel were ineffective for not presenting testimony from these fire experts because: 1) new facts have been uncovered since the hearing on the new trial[2]; and 2) Defendant's motion for new trial cannot be characterized as "full and fair" based on the failure of Mr. Ryan to adequately and completely present the issues to the court.

Jeffry K. Finer, Esq., the Defendant's original appointed counsel (Ct. Rec. 10), retained Alert Security & Investigations to perform a fire investigation. The expense for this was authorized and paid for by the court. (Ct. Rec. 52).

---

[2] Any "new" facts since the hearing on the new trial would have been before the undersigned on the Defendant's renewed Motion For Release From Custody Pending Appeal (Ct. Rec. 311) and part of the record on direct appeal to the Ninth Circuit (Ct. Rec. 323), or are raised for the first time in the supplemental declarations of these experts submitted in conjunction with the Section 2255 motion and therefore, germane to Defendant's "actual innocence" claim, discussed *infra*.

**ORDER DENYING §2255 MOTION- 4**

Appended to Mr. Ryan's motion for new trial was a copy of the report prepared for Mr. Finer by Alert Security & Investigations, dated April 5, 2005. (Ct. Rec. 255-2 and Ct. Rec. 274-2). This report was prepared by Gordon Sheldon who, based on his investigation, concluded that "[t]his was not a smoldering fire, it burned quick, hot and then ran out of fuel (combustibles)." Sheldon took issue with Government investigators who claimed that Defendant started the fire around midnight and that it was discovered three and a half hours later.[3] Mr. Sheldon was Mr. Hattem's assistant. In the motion for new trial, Mr. Ryan proffered that Mr. DeHaan had recently investigated the fire and agreed with the conclusions of the report prepared by Alert. The motion was heard on January 10, 2006. During the hearing, Defendant acknowledged on the witness stand that Mr. DeHaan had not been contacted by either party prior to or during trial, meaning that Mr. Finer had not contacted him either. (Ct. Rec. 300 at pp. 21-22) Accordingly, Mr. DeHaan did not come into the picture until **after** Defendant's trial was concluded. . Neither Mr. Hattem, Mr. Sheldon, or Mr. DeHaan were called as witnesses at the motion hearing. In the course of ruling from the bench on the motion, the undersigned did note that as to witnesses who would allegedly testify, the court did not have direct testimony before it and that the evidence was only in the form of hearsay. Nevertheless, the court also noted that it did have the necessary information before it and the matter was ripe for ruling. Assuming the hearsay objections could be overcome, the undersigned found that trial counsel had not acted ineffectively by failing to call Hattem and Sheldon as witnesses. (Ct. Rec. 300 at p. 96). In other words, even accepting that Hattem, Sheldon and DeHaan would have testified consistent with the Alert report, the undersigned still would not have found trial counsel to be ineffective.

_____

[3] The government's theory of the case was that Defendant had started the fire around 12:42 a.m. after he had re-set the burglary alarm, per alarm records.

**ORDER DENYING §2255 MOTION- 5**

On June 2, 2006, Mr. Ryan, on behalf of Defendant, filed a renewed Motion For Release From Custody Pending Appeal (Ct. Rec. 311).  Appended to this motion were declarations from Brian Hattem, John Scrivner and John DeHaan.  On July 14, 2006, the undersigned issued an order (Ct. Rec. 317) denying the motion, noting that this motion raised essentially the same arguments rejected in the court's January 20, 2006 order (Ct. Rec. 280) denying Defendant's initial motion for release pending appeal (Ct. Rec. 253), "except that additional detail has been provided concerning conclusions reached by Defendants' experts who had been consulted prior to trial."[4]  Assuming that one or more debatable issues had been raised by the renewed motion for release pending appeal, this court found Defendant had failed to demonstrate exceptional reasons or circumstances that would justify departure from the general rule that those convicted are subject to immediate incarceration.  The motion for renewed release pending appeal, along with the appended declarations, was part of the record on appeal that was available to the Ninth Circuit Court of Appeals in determining Plaintiff's ineffective assistance claims.  (See Ct. Rec. 323).

In his opening brief on appeal to the Ninth Circuit, Mr. Ryan specifically argued that trial counsel were ineffective for failing to use Brian Hattem and Gordon Sheldon as witnesses, and that Mr. Hattem "was prepared to testify at trial that the time line established for the fire by competent evidence did not match the time line proffered by the government witnesses" and that "the fire was ignited much later in the morning."  (2006 WL 2429703 at *22).  In his opening appellate brief, Mr. Ryan noted that Mr. DeHaan agreed with Mr. Hattem that there was no way to establish the precise time of ignition; the fire burned for about an hour; and

---

[4] The initial motion for release pending appeal (Ct. Rec. 253) was filed simultaneously with the motions for judgment of acquittal and for new trial. All of these motions were heard together in court on January 10, 2006.

**ORDER DENYING §2255 MOTION- 6**

the dance floor burn was not the result of a flammable liquid pour, but was scorched by the radiant heat from the fire near the stage, which was close to the dance floor. (*Id*. at *23).

In sum then, Mr. Ryan adequately presented to this court, and to the court of appeals, the issue concerning alleged ineffective assistance of trial counsel regarding failure to call certain fire expert witnesses at trial. The court of appeals rejected that claim and it cannot now be relitigated via a Section 2255 motion.

## 2. Right To Counsel Of Choice

On appeal to the circuit, one of the issues presented by Mr. Ryan was that "[t]he actions of the government agent denied Mr. Falcon due process under the Constitution of the United States, where that agent threatened defense counsel [Mr. Finer] and instructed witnesses not to talk to defense investigators." 2006 WL 2429703 at *14. The circuit ruled on this issue as follows:

> The district court did not abuse its discretion in ruling on the alleged misconduct. The court granted the only relief Falcon requested, the appointment of additional counsel. Falcon has not shown that the alleged misconduct had an effect on the fairness of his trial.

2007 WL 1649986 at *1. Accordingly, this issue cannot be relitigated via a Section 2255 motion.

In any event, this court notes that it never found there was government misconduct. (Ct. Rec. 96 at p. 8). Instead, the court appointed Ms. Hunt and Ms. Deater from the Federal Defenders Office to serve as additional appointed counsel along with Mr. Finer. Mr. Finer subsequently moved to withdraw as counsel and this court granted the motion. (Ct. Rec. 112 and 118). Moreover, it bears noting that Mr. Finer was appointed by the court based on Defendant's indigency (Ct. Rec. 10), and it is well-established that indigent defendants do not have a constitutional right to be represented by their counsel of choice. *Gonzalez v. Knowles*, 515 F.3d 1006, 1012 (9th Cir. 2008).

**ORDER DENYING §2255 MOTION- 7**

1

## B.  Ineffective Assistance Of Trial Counsel

2      In a Section 2255 motion based on ineffective assistance of counsel, the

3   movant must prove:  (1) counsel's performance was deficient, and (2) movant was

4   prejudiced by such deficiency.  *Strickland v. Washington*, 466 U.S. 668, 687, 104

5   S.Ct. 2052 (1984).  As to the first prong, there is a strong presumption defense

6   counsel's performance was sufficiently effective.  *Id*. at 689.  Petitioner must show

7   his counsels' performance was "outside the wide range of professionally competent

8   assistance."  *Id*. at 690.  Tactical decisions of trial counsel deserve deference when:

9   (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel

10  makes an informed decision based on investigation; and (3) the decision appears

11  reasonable under the circumstances.  *Thompson v. Calderon*, 86 F.3d 1509, 1515-

12  16 (9th Cir. 1996), citing *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

13  As to the second prong, petitioner must demonstrate a reasonable probability that,

14  but for counsel's errors, the result of the proceeding would have been different- i.e.

15  the fact finder would have had a reasonable doubt respecting guilt.  A "reasonable

16  probability" is a "probability sufficient to undermine confidence in the outcome" of

17  the trial.  *Strickland*, 466 U.S. at 694.  The essence of an ineffective assistance

18  counsel claim is that counsel's conduct so undermined the proper functioning of the

19  adversarial process that the trial cannot be relied upon as having produced a just

20  result.  *Id*. at 686.  Both prongs of the ineffective assistance test need not be

21  addressed if the claim can be disposed of on one prong.  *Id*. at 697.  According to

22  the Supreme Court:

23         The object of an ineffectiveness claim is  not to grade
       counsel's performance.  If it is easier to dispose of an
24       ineffectiveness claim on the ground of lack of sufficient
       prejudice . . . that course should be followed.  Courts
25       should strive to ensure that ineffectiveness claims not
       become so burdensome to defense counsel that the entire
26       criminal justice system suffers as a result.

27  *Id*.

28

**ORDER DENYING §2255 MOTION- 8**

### 1. Failure To Refute That Defendant Would Receive Insurance Proceeds

### a. Court Determination Of Insurance Coverage As A Matter Of Law

Defendant contends his trial counsel were ineffective because they allowed the jury to decide the legal question of coverage under the applicable Scottsdale Insurance Policy. Citing a host of Washington cases, Defendant contends it was this court's responsibility to determine the insurance coverage issue as a matter of law, and that trial counsel erred in failing to bring that to this court's attention. Defendant contends it was error to allow the jury to decide the coverage question as a factual matter.

While in a civil jury trial, perhaps it would have been the exclusive province of the court to determine the issue of coverage as a matter of law, a criminal jury trial is a different situation. In a criminal case, the fundamental and elementary principle is that the Government must prove every element of the crime beyond a reasonable doubt and may not direct a verdict on any issue. *United States v. Johnson*, 718 F.2d 1317, 1323 (5th Cir. 1983). The Sixth Amendment "reflect[s] a fundamental decision about the exercise of official power- a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or a group of judges." *Id*. at 1320, quoting *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444 (1968). A jury decides guilt or innocence.

It is true that the nature of insurance coverage was not per se an element of the crime that the government was required to prove beyond a reasonable doubt. Rather, it related to motive and whether Defendant had arranged coverage so that he was the sole beneficiary of insurance proceeds in the event of a fire. Nevertheless, motive was clearly related to, and intertwined with, the element of whether Defendant "maliciously" destroyed the Wild Horse Saloon (that is, that he acted without lawful reason, cause or excuse). (Jury Instruction No. 4 at Ct. Rec.

**ORDER DENYING §2255 MOTION- 9**

209).  Defendant seems to assume that had this court interpreted the insurance

contract, it would have found as a matter of law that Defendant would not have

been the sole beneficiary of insurance proceeds.  The Defendant cannot make such

an assumption.  The court has little doubt that had it interpreted the insurance

contract and found as a matter of law that Defendant would have been the sole

beneficiary of any insurance proceeds, the Defendant would argue, and

legitimately so, that the court had usurped the jury's responsibility to make that

determination and in doing so, denied the Defendant his constitutional right to a

jury trial.  In essence, Defendant would argue this court effectively directed the

jury to render a guilty verdict.  "[A]lthough attempting to separate 'fact' from 'law'

may sometimes be useful, particularly when a statute or a federal rule turns on the

differentiation, it is not the issue here.  The issue is the role of the jury in the trial

guaranteed to the accused."  *Johnson*, 718 F.2d at 1321.  Conflicting

interpretations of the insurance coverage were offered at trial by the Government

and the Defendant.  It was for the jury to decide which interpretation was correct.

Because in the context of a criminal jury trial, it was not this court's

province to determine the nature of insurance coverage, but rather the jury's, trial

counsel did not act ineffectively in failing to request the court to make that

determination as a matter of law.

### b.  Opinion Testimony Of Witnesses Re Insurance Coverage

Defendant asserts that trial counsel were ineffective by failing to object to

improper opinion testimony from four "fact" witnesses who were allowed to act, in

effect, as expert witnesses for the Government and render legal opinions on

coverage.[5]

_____

[5] The witnesses were Scottsdale Senior Claims Examiner Betty Wine,
Scottsdale's Independent Adjustor Chad Bell, Insurance Agent Kenneth Kurtz, and

**ORDER DENYING §2255 MOTION- 10**

Because it was not the court's responsibility to interpret insurance coverage as a matter of law, as discussed above, these witnesses did not impermissibly testify to a "legal" conclusion.  To the extent these witnesses testified as experts under Fed. R. Evid. 702, there was no violation of Fed. R. Evid. 704(a) (testimony in the form of opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact).  The testimony of these witnesses assisted the trier of fact (the jury) in determining the issue of coverage.[6]  To the extent these witnesses offered lay opinion testimony, it was rationally based on their perceptions (their personal familiarity with the Scottsdale policy), and helpful to a clear understanding of their testimony and/or the determination of a fact in issue to be decided by the jury (insurance coverage).  Fed. R. Evid. 701.  As lay opinion testimony, it did not violate Fed. R. Evid. 704(a).

Finally,  Defendant's trial counsel did challenge the Government's interpretation of the insurance policy that  Defendant was the sole beneficiary of the insurance proceeds.  Counsel offered the testimony of insurance expert Rob McWilliams in that regard.  (Ct. Rec. 236 at pp. 1050-51, 1053, 1066).  Indeed, Defendant cites to this very testimony in his opening brief in support of his Section 2255 motion.

Trial counsel adequately attempted to refute the Government's interpretation of the insurance coverage and did not render ineffective assistance in that effort.

## 2.  Failure To Impeach Lynn DuVal

Mr. Kurtz's assistant, Leanne Green.

[6] Defendant's Section 2255 motion does not specifically allege that these witnesses were not qualified to render such opinions and that trial counsel rendered ineffective assistance by failing to argue such to the court.

**ORDER DENYING §2255 MOTION- 11**

Defendant contends his trial counsel rendered ineffective assistance by failing to impeach the testimony of Government witness, Lynn DuVal.

DuVal did not testify in the Government's case-in-chief.  She was called as a rebuttal witness by the Government after her daughter, Bobbi Johnson, had testified for the Defendant in his case-in-chief.   Johnson owned the Wild Horse Saloon from March/April 2002 to December 2002.  (Ct. Rec. 238 at p. 1353). Johnson was familiar with Scott Lanes who had managed the saloon previously under a different owner.  Johnson testified that sometime in 2002 when she was getting the saloon ready to be opened, Lanes came to the saloon, walked in, uttered a profanity, and turned around and left.  (*Id*. at pp. 1364-65).  Johnson testified that on another occasion, she was "summoned" to meet Lanes at his club, Hotteez.  She said she attended that meeting with her mother, Lynn DuVal, and her uncle, Charles Irwin.  Johnson stated that Lanes told her she should not be opening the Wild Horse and that he would rather see the place burned down than somebody operating it.  (*Id*. at pp. 1366-67).  Johnson also testified that on another occasion, while she was visiting Lanes at his office, that he took out a handgun, placed it on the table, and stated that the "bar business is dangerous."  (*Id*. at pp. 1382-83).

Defense counsel attempted to have Johnson testify that another individual, Laurie Coleman, came into the Wild Horse one evening to deliver a message from Lanes that he was threatening to burn down the Wild Horse.  The court did not allow the testimony, finding it to be hearsay not within any of the enumerated exceptions to the rule.  (*Id*. at p. 1380).  Johnson did testify that based on perceived threats, she called the Spokane County Sheriff's Department on one occasion.  (*Id*. at p. 1382).

DuVal was a partner with her daughter (Johnson) in the operation of the Wild Horse.  (Ct. Rec. 239 at p. 1670).  DuVal testified that when Lanes came to the Wild Horse in April 2002, she did not hear him use any profanity, and that he simply walked in, glanced around, "wished us well," said he did not think they

**ORDER DENYING §2255 MOTION- 12**

would make it and turned around and left.  (*Id*. at p. 1671).  DuVal testified that she recalled going to Lanes' club with her daughter for a meeting with Lanes. According to DuVal, the first time she went to Hotteez, Lanes was not there, but the second time she went, Lanes was there and had the information for her that she had requested.  DuVal testified that Lanes was very helpful on that occasion, did not make any threats against the Wild Horse, and did not state he wanted to burn the Wild Horse down.  (*Id*. at pp. 1673-74).  Asked whether Lanes had also pulled out a revolver at this meeting, DuVal indicated she did not see any weapon and that at no time had she seen Lanes pull out a weapon.  (*Id*. at pp. 1674).

Defense counsel did not cross-examine DuVal.  Defendant contends his counsel should have impeached DuVal by asking her about a July 20, 2002 call she made to the Spokane County Police to report that a friend of Lanes, Laurie Coleman, had come into the Wild Horse to deliver a message from Lanes that he was threatening to burn down the Wild Horse.  The report (Ct. Rec. 334) recited that Lanes had made "several threats" after he no longer managed the Wild Horse. Furthermore, according to the report, DuVal stated that Lanes had vandalized the Wild Horse "many times in the past."[7]

A legitimate reason why defense counsel did not attempt to impeach DuVal with the report was because this court had already ruled that Coleman's alleged statement was inadmissible hearsay.  Even assuming, however, that counsel's failure to attempt to impeach DuVal with the report was deficient in some respect, the court concludes it would not have changed the outcome of the trial considering the record as a whole.  Of significance, DuVal had provided testimony on other matters which tended to undermine Johnson's version of events.  By cross examining DuVal, defense counsel may well have further emphasized the inconsistencies with Johnson's testimony thereby assisting the prosecution.

---

[7] In the report, Lynn DuVal is referred to as "Linda Duval."

**ORDER DENYING §2255 MOTION- 13**

Having had the opportunity to hear and view DuVal on the witness stand, defense counsel could reasonably have concluded that the additional questioning would have only harmed the cause of their client.  Additionally, the defense theory relating to threats having been made was placed before the jury through the testimony of other witnesses.

Charles Irwin testified he was present at "a meeting" at Hotteez with Lanes at which DuVal and Johnson were present.[8]  He stated he never heard Lanes threaten to burn down the Wild Horse, although on cross-examination by the defense, he acknowledged that he was not present for the entire meeting because he went to the restroom.  He also acknowledged that Johnson had asked him to accompany her to Hotteez because she was afraid of Lanes.  (Ct. Rec. 239 at pp. 1679-80).

Shelby Stanton testified she heard Lanes make a threat to burn down the Wild Horse, specifically that "[h]e mentioned to me that he would see the bar burned to the ground before he would see Kelly Falcon have it."  (Ct. Rec. 234 at p. 869).  John McCormack, the property manager with regard to the Wild Horse, testified that Lanes had threatened him when McCormack refused Lanes entry into the Wild Horse to retrieve equipment after Lanes had been evicted from the property.  (Ct. Rec. 238 at p. 1429).  In closing argument, defense counsel made specific reference to these threats, as well as to the testimony of Mr. Irwin.  (Ct. Rec. 239 at pp. 1772-75).

Moreover, defense counsel called into question the veracity of DuVal's testimony, pointing out  to the jury that she had a reason not to like the Defendant because he had sued DuVal and Johnson, obtained a judgment against them, following which their partnership filed for bankruptcy.  (Ct. Rec. 237 at pp. 1133-34; Ct. Rec. 239 at pp. 1772-73).  Although counsel did not confront DuVal with

---

[8]  Irwin is DuVal's sister.  (Ct. Rec. 234 at p. 904).

**ORDER DENYING §2255 MOTION- 14**

this on cross-examination, they did not need to because this evidence was already in the record courtesy of the Government's witness, Eric Younger.

And finally, defense counsel noted that Raymond Head testified that on the morning after the fire, he spoke with Lanes during which he made a comment to Lanes that he (Lanes) should have an alibi for last night, to which Lanes responded that they probably already had the perpetrator in handcuffs ("bracelets") and that the only stuff that burned was his equipment that was all piled together on the stage. (Ct. Rec. 239 at p. 1628). Of course, the inference from Mr. Head's testimony was that because Lanes knew the fire had been deliberately set and what had burned, he could have been the culprit.

In sum, even though defense counsel did not impeach DuVal with the police report, they presented a significant amount of evidence suggesting Lanes started the fire, and not the Defendant. They also pointed out how DuVal might be biased against the Defendant because of the civil judgment he had obtained against her. Despite this, the jury found that Defendant was responsible for the fire. As such, the court concludes that impeaching DuVal with the police report would not have altered the outcome of the trial and therefore, did not prejudice the Defendant.[9]

## C. Ineffective Assistance Of Counsel On Motion For New Trial And On Appeal

In the appeal setting, the movant must show counsel's advice, errors or omissions, fell below an objective standard of reasonableness and there is a

---

[9] One of the grounds that Defendant's appellate counsel (Ryan) asserted as ineffective assistance on the part of trial counsel (Hunt and Deater) was their failure to call a certain witness to testify that DuVal lied under oath regarding her fear of Lanes. 2007 WL 1649986 at * 25. As noted, on direct appeal, the Ninth Circuit found that none of the Defendant's IAC claims had merit.

**ORDER DENYING §2255 MOTION- 15**

reasonable probability that, but for counsel's unprofessional errors, the movant would have prevailed on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

For the reasons set forth in Section A., *supra*, and because the grounds raised in this Section 2255 motion and not presented on direct appeal are insufficient to warrant post-conviction relief, Mr. Ryan did not render ineffective assistance in his pursuit of a motion of a new trial and a direct appeal on behalf of the Defendant.

### D.  Alleged Government Misconduct Re DuVal Testimony

Defendant contends the Government knowingly presented false testimony from DuVal because it knew she had made the report to the Spokane County Police, discussed in Section B. 2., *supra*.  A prosecutor has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted.  *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  "[A] State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . merely because the false testimony goes only to the credibility of the witness."  *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 (1959).

At trial, the Government asked DuVal specifically about what occurred or did not occur during her particular interactions with Lanes in April 2002 when he walked into the Wild Horse Saloon, and on another occasion when she accompanied her daughter to Hotteez, the club owned by Lanes.  DuVal testified that during the April 2002 interaction with Lanes at the Wild Horse Saloon, she did not hear him utter any profanity and that he did not make any threat against her. With regard to the meeting at Hotteez, DuVal testified that on that particular occasion, Lanes did not make any threats against the Wild Horse Saloon, did not make any threats against John McCormack, did not make any statements that he

**ORDER DENYING §2255 MOTION- 16**

wanted to burn down the Wild Horse Saloon, and did not see him pull out a weapon or firearm. The police report was made in July 2002 and was prompted not by anything Lanes said in the presence of DuVal, but by what a Laurie Coleman told DuVal when she visited the Wild Horse Saloon on the night of July 20, 2002 (that Lanes was threatening to burn down the Wild Horse Saloon).

Accordingly, what DuVal reported to the police on July 20, 2002, did not render "false" her testimony about what occurred or did not occur during her personal interactions with Lanes at the Wild Horse Saloon on April 2002, and on another occasion at Lanes' establishment, Hotteez. Therefore, the Government did not knowingly present false testimony from DuVal regarding her personal interactions with Lanes on these occasions. The Government neither solicited false evidence or allowed false evidence to go uncorrected. *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005), citing *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103 (1957). DuVal's testimony was not "clearly false."

The issue with regard to DuVal's testimony is not one of government misconduct, but whether Defendant's trial counsel rendered ineffective assistance by not seeking to impeach DuVal's credibility with the police report. That issue has been addressed *supra*.

### E.  Actual Innocence

Defendant alleges a "pure factual innocence" claim which is a constitutional claim in itself (a "free-standing" claim). *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853 (1993). This is contrasted with a procedural innocence claim which is not itself a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315, 115 S.Ct. 851 (1995), quoting *Herrera*, 506 U.S. at 404. With a *Schlup* type claim, a petitioner alleges that because newly discovered evidence demonstrates his actual innocence, it would be

**ORDER DENYING §2255 MOTION- 17**

a miscarriage of justice for the court not to consider the merits of claims that are otherwise barred because of a procedural default on the part of the petitioner.

The Ninth Circuit has articulated a minimum standard for freestanding actual innocence claims, that being that "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Osborne v. District Attorney's Office for Third Judicial Dist.*, 521 F.3d 1118, 1130-31 (9th Cir. 2008), quoting *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)(en banc).[10]

Defendant asserts the expert reports of Hattem, Sheldon, DeHaan and Scrivner "show that there is no evidence that [Defendant] was present when the fire started." As noted above, these experts concluded the fire was ignited much later than 12:42 a.m., when alarm records show Defendant left the building, and that the fire burned for about an hour. Defendant further asserts that the Government's claim that he would receive all of the insurance proceeds is "clearly wrong," thereby eliminating any motive for Defendant to commit arson.

Having reviewed all of the reports of the experts and/or their declarations concerning how the fire started, when it started, and how long it burned, the undersigned concludes that while this evidence may demonstrate some doubt about Defendant's guilt because it appears there is a legitimate debate between Defendant's experts and the Government's experts regarding these issues, it does not affirmatively prove that Defendant is probably innocent.[11] In this regard, it is

---

[10] On November 3, 2008, the U.S. Supreme Court granted certiorari in *Osborne*. 129 S.Ct. 488 (2008).

[11] It is noted that the expert declarations attached to Defendant's opening memorandum in support of his Section 2255 motion (Exs. A, C and D) are the same declarations that Mr. Ryan submitted in conjunction with his Motion For Release From Custody Pending Appeal and which were part of the record on direct appeal to the Ninth Circuit. Attached to Defendant's Section 2255 reply

**ORDER DENYING §2255 MOTION- 18**

noted that at trial, even the Government's expert, Norman Loftin, acknowledged under cross-examination that in a supplemental report prepared after he had been investigating the fire for a "large" period of time, that the fire had burned for some two to four hours before discovery.  He also acknowledged that there were "too many unknown factors" to pinpoint an exact time of when the fire originated.  (Ct. Rec. 230 at pp. 276-77).[12]   Nevertheless, the jury found Defendant was responsible for the fire and the Government presented sufficient evidence **as a whole** from which a jury could conclude that Defendant was responsible for the fire.  There is no disagreement among the experts that the fire was deliberately set by someone (that it was an arson), although they disagree as to how and when it was set.[13]

memorandum are supplemental declarations from these experts.

[12]A fire burning for two hours before discovery at approximately 4:00 a.m. would have originated at 2:00 a.m., well after alarm records showed Defendant had vacated the premises at 12:42 a.m.  In closing argument, defense counsel emphasized that the Government experts (Hart and Loftin) testified that the fire lasted "two plus hours," noting that two hours before discovery of the fire was approximately 2:00 a.m., leaving "plenty of time after [Defendant] left the bar for somebody to come in and do this."  (Ct. Rec. 239 at p. 1770).

[13]  Defendant contends that although trial counsel said their theory was that someone hid in the bar when Defendant left and then set the fire, they did not make that argument at trial.  In opening argument, counsel told the jury it would hear evidence that there were parts of the Wild Horse that were not covered by the motion detector, including the bathrooms.  (Ct. Rec. 229 at p. 58).  In closing argument, counsel pointed out that the Government experts testified that the fire lasted "two plus hours," noting that two hours before discovery of the fire was approximately 2:00 a.m., leaving "plenty of time after [Defendant] left the bar for somebody to come in and do this."  (Ct. Rec. 239 at p. 1770).  The argument by counsel was sufficient to put the jury on notice that one possibility was that someone had hid in the bar or somehow gotten into bar after Defendant had left for

**ORDER DENYING §2255 MOTION- 19**

Furthermore, for the reasons set forth in Section B. 1. a. and b., *supra*, there was evidence to support the Government's contention that Defendant would be the sole beneficiary of the insurance proceeds and therefore, said contention was not "clearly wrong."  There was sufficient evidence offered (Defendant being the sole beneficiary of the insurance proceeds and his financial circumstances at the time fo the fire) from which the jury could conclude that Defendant had a motive to burn down the Wild Horse Saloon.

**III.  CONCLUSION**

Based on the foregoing reasons,  Defendant's Section 2255 motion (Ct. Rec. 331) is **DENIED**.

**IT IS SO ORDERED**.  The District Executive shall forward copies of this order to counsel.

**DATED** this 12th  of December, 2008.

*S/ Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

the evening.  As discussed, the defense made every effort to pin the blame on Scott Lanes, offering evidence regarding his familiarity with the Wild Horse Saloon, his motive for wanting to burn down the Wild Horse, and statements he had made to others regarding wanting to burn it down.  (*Id*. at pp. 1771-77).

**ORDER DENYING §2255 MOTION- 20**